714 So.2d 20 (1998)
Lucretia FARR
v.
RISCORP, et al.
No. 97-CA-2164.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1998.
*21 Gregory D. Guth, Sacks & Smith, New Orleans, for Plaintiff-Appellant Lucretia Farr.
Darryl J. Foster, Lemle & Kelleher, New Orleans, for Defendant-Appellee Loretta DeSoto.
Before KLEES, BYRNES and PLOTKIN, JJ.
KLEES, Judge.
On October 3, 1996, plaintiff/appellant Lucretia Farr ("plaintiff") filed this lawsuit against defendant/appellee, Loretta DeSoto ("defendant"). Plaintiff filed a petition against the defendant alleging that defendant violated her constitutionally protected right of privacy. Specifically, plaintiff alleges that defendant wrongfully interfered with her physician/patient relationship by meeting with plaintiff's treating physician to discuss plaintiff's medical condition, prognosis and treatment. On February 4, 1997, defendant moved for summary judgment on three grounds: (1) that defendant did not violate the physician/patient privilege; (2) that defendant is immune from tort suits by virtue of the exclusive remedy provision of the Compensation Act; and (3) there was no damage to plaintiff. On April 22, 1997, the trial court granted defendant's motion for summary judgment. Plaintiff filed a motion for New Trial which was denied. Thereafter, plaintiff filed an appeal this final judgment. After considering argument of counsel and reviewing the pleadings, we affirm.

FACTS
On October 23, 1995, plaintiff was exposed to the nitrogen tetroxide release at Gaylord Chemical in Bogalusa, Louisiana, while in the course and scope of her employment. Plaintiff made a claim for workers' compensation benefits with her employer, First Home Health. First Home Health contracted with a company called Riscorp to administer plaintiff's compensation claim. Thereafter, Riscorp hired Marianna Hixon and Associates to provide medical case management services for plaintiff's claim. Hixon assigned defendant to be the medical case management consultant for plaintiff's claim. Thus, defendant was the agent for plaintiff's employer and Hixon.
On July 12, 1996, defendant attended a meeting with plaintiff and her attorney to discuss the management of plaintiff's case. Although plaintiff signed a standard medical authorization, plaintiff's counsel scratched out the provisions of the authorization that allowed defendant "to discuss my past, present and/or future medical and/or physical condition with." Plaintiff's counsel further scratched out "opinions" from the list of items authorized.
On July 18, 1996, defendant met with Dr. Mark James, plaintiff's physician, to discuss with him plaintiff's treatment. Thereafter, defendant wrote a letter to Dr. James reiterating the substance of that meeting. After Dr. James countersigned attesting to the letter's accuracy, a copy of the letter was sent to plaintiff's counsel.
In addition to the injunctive relief plaintiff seeks, plaintiff seeks damages for the invasion of her constitutional right to privacy; for violations of the Louisiana Unfair Trade Practices and Consumer Protection Law; and for the violations of her rights under the law of negligence.

ARGUMENT
The issue presented in this appeal is whether the trial court properly granted a summary judgment in favor of defendant and against plaintiff, thereby dismissing plaintiff's suit with prejudice.
Appellate courts must review summary judgments de novo. The proper standard of review for the appellate court on a summary judgment claim is whether any genuine issues of material fact exists, and *22 whether the mover is entitled to judgment as a matter of law.
In Louisiana, the Code of Civil Procedure Article 966 sets forth the law regarding summary judgment. In 1996, the legislature amended Article 966 to proclaim that summary judgments are "favored" and that the rules should be liberally applied. Additionally, in 1997 the legislature again amended Art. 966 and enacted new provisions "with the intention of making it easier for the moving party to obtain summary judgment ... by altering the burdens of proof in favor of the moving party." Young v. Dupre Transport Company, 97-0591, 700 So.2d 1156 (La.App. 4 Cir. 10/1/97). Consequently, the 1996 and 1997 amendments require courts to change their attitudes when reviewing motions for summary judgment from the attitude required under the pre-amendment jurisprudence which proclaimed just the opposite that summary judgments were not favored and thus should be strictly construed. Moreover, the Supreme Court has recently held that the 1997 amendment to Article 966 should be applied retroactively. See Kaufmann v. Fleet Tire Service of Louisiana, 97-1428, 699 So.2d 75 (La.9/5/97).
Procedurally, the court's first task on a motion for summary judgment is to determine whether the moving party's supporting documentspleadings, deposition, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. La.Code Civ. Pro. Art. 966(B). If moving party establishes a prima facie case that no genuine issues of material fact exists, then the party opposing the summary judgment must "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La.Code Civ. Pro. Art. 966(C)(2).
Although this case arose prior to the August 15, 1997 effective date of the 1997 amendment to the summary judgment law, we find that the summary judgment decree was proper under both the 1996 and 1997 law. In this case, plaintiff has failed to establish a prima facie case that: (1) her constitutional right to privacy was violated and (2) her rights under the law of negligence were violated.

I. WHETHER THE PLAINTIFF'S PHYSICIAN/PATIENT PRIVILEGE WAS VIOLATED BY DEFENDANT

The physician/patient privilege was waived when the plaintiff made a claim for workers' compensation benefits with her employer, First Home Health. Under Louisiana law, "in noncriminal proceedings, testimonial privileges, exceptions, and waiver with respect to communications between a health care provider and his patient are governed by the Louisiana Code of Evidence." La. R.S. 13:3734(B). The Louisiana Code of Evidence article 510 B(2)(a), provides that there is no privilege in a non-criminal proceeding as to a communication which relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding. Although Art. 510 E limits the exceptions of Art. 510 B(2)(a) "to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure ...", the defendant argues that the plaintiff is still not protected under the physician/patient privilege.
Specifically, the defendant alleges that the physician/patient privilege does not protect the plaintiff because the privilege only protects "confidential communications". See C.E. Art. 510 B(1). We agree. Under article 510 A(8)(a) "confidential communications" is defined as "the transmittal or acquisition of information not intended to be disclosed to persons other than: ... (iv)[a] patient's health care insurer, including any entity that provides indemnification to a patient." The comment to C.E. art. 510 states that "the phrase `health care insurer'... is broader than entities denominated as insurance companies, and, as the paragraph expressly states, includes any entity that provides indemnification to patients, hence including self-insurers and government plans, etc." See C.E. Art. 510 comment (h). We agree with the defendant that the worker's compensation carrier meets the definition of "healthcare insurer" because the compensation carrier is statutorily obligated to provide medical benefits to employees for on the *23 job injuries. Thus, the plaintiff is not protected under the physician/patient privilege because the plaintiff's communications with Dr. James are not "confidential communications" with respect to the defendantan agent of the compensation carrier.

II. WHETHER THE PLAINTIFF CAN STATE A NEGLIGENCE CLAIM AGAINST THE DEFENDANT

Plaintiff alleges that the Compensation Act provides a remedy for an intentional act.[1] Specifically, plaintiff argues that she has a tort claim against the defendant for the injury she suffered as a consequence of the defendant's illegal and/or unlawful actions. Plaintiff's argument is without merit.
The Louisiana Worker's Compensation Act LSA-R.S. 23:1032 states:
Except for intentional acts ... the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal ... or employee of such employer or principal, for said injury, or compensable sickness or disease.
The defendant cites to Hymel v. Cigna to support the argument that she is immune from tort claims. We agree. In Hymel, the employee brought a tort action against his worker's compensation carrier and its alleged employee to recover for maliciously and intentionally providing employer with false and misleading information. Hymel v. Cigna, 563 So.2d 488 (La.App. 1 Cir.1990). The court stated that because the employee did not allege that the injuries he originally sustained in the course and scope of his employment were due to an intentional tort, the employee's only remedy was within the provisions of the Worker's Compensation Act not in tort. Id. at 488.
This situation is factually similar to Hymel. Here, the plaintiff does not allege that the injuries she sustained in the course and scope of her employment were due to an intentional tort. Rather, plaintiff argues that the intentional tort occurred, after she made the claim for workers' compensation benefits, when the defendant allegedly violated her constitutional right to privacy. Thus, although the exclusivity provision provides an exception for intentional torts, the plaintiff is not alleging that she was "originally intentionally injured in the course and scope of" her employment and should be denied a remedy in tort.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court rendering summary judgment in favor of defendant, Loretta DeSoto and against plaintiff, Lucretia Farr.
AFFIRMED.
BYRNES, J., concurs with reasons.
PLOTKIN, J., dissents with written reasons.
BYRNES, Judge, concurring with reasons.
I agree with the well reasoned opinion of the majority in its entirety. Moreover, even if we assume for purposes of argument only, that the reasoning of the majority is wrong, the result remains the same.
Issues of confidentiality and the propriety of communications generally fall into two categories:
1. Areas in which the information may be withheld, the best known of which is the right not to be compelled to testify against oneself in criminal proceedings. This category would also include privileges generally. As a rule, asking for information in this category is not a sanctionable act. The remedy of the party from who the information is sought is to refuse the request.

*24 2. The second category I would describe as one in which there is a prohibition against asking, such as the prohibition against attorneys communicating directly with parties who are represented by counsel. Perhaps the military's policy of "don't ask, don't tell" in matters of sexual orientation would also fit into this category.
The communications in the instant case, if privileged at all, fall into the first category. Therefore, at best there is a right to refuse the information, but no prohibition against asking for it. If physicians are asked for information about patients that they feel is a confidential part of the physician-patient relationship, it is up to the physician to assert that privilege. There is no prohibition against asking for the information. Normally it is up to the party possessing privileged information to assert the privilege. Privileges are not normally prohibitions against asking, they are licenses not to answer. For example, LSA-C.E. art. 510D provides that the physician is presumed to have the authority to assert the privilege.
By way of analogy, customer account information at banking institutions is confidential. This does not mean that a request for such information is actionable. It is incumbent upon the banking institution to refuse the information absent a court orderor face the possibility of liability to the customer for breach of privacy.
This is the significance of Breaux v. Hoffpauir, 95-393 (La.App. 3 Cir.1995); 664 So.2d 726, erroneously cited by the plaintiff for the proposition that it was wrong for Loretta DeSoto to discuss the plaintiff's case with plaintiff's treating physician. Breaux did not say that it was wrong for the nurse in that case to ask for the information. Breaux was concerned with the liability of the party releasing confidential information. Nothing in Breaux suggests that there is any cause of action against the party requesting and receiving the information.
The fact that there is a discovery process to compel the disclosure of information in certain instances in not a prohibition against obtaining that information voluntarily. Discovery is designed to provide a method by which information can be obtained that would not be furnished voluntarily. The discovery process was not designed to require that the discovery process be employed when the information can be obtained voluntarily.
Health care providers are expected to respect the confidentiality of patient records. If my doctor releases my medical records without my authorization or a court order I may have grounds to sue him, but not the recipient of that information unless the law unambiguously provides me with the right to do so.
Likewise, it is not a violation of the constitutional right to privacy to ask for confidential information or to receive it when voluntarily given.
It is significant that neither the plaintiff nor the dissent have found a case that even hints at any liability on the part of a person who merely requested confidential information voluntarily given. Therefore, plaintiff has no cause of action against those who may have requested and received her health care information.
This case is fraught with implications affecting the public interest. If plaintiff's arguments are permitted to prevail and are carried to their logical conclusions, the unwary innocent may become enmeshed in legal liability for merely asking innocent questions.
PLOTKIN, Judge, dissenting with written reasons.
The issue presented by this appeal is extremely important to the practice of personal injury law in Louisiana, both tort litigation and worker's compensation litigation. I believe that the rule enunciated by the majority would severely undermine the public policy rules which protect confidential communications between a physician and his patient. Accordingly, I respectfully dissent from the majority decision affirming the trial court's granting of the motion for summary judgment in favor of defendant Loretta DeSoto.
The importance of the implications of the majority opinion cannot be overstated. Taking the rule announced in the majority opinion *25 to its logical conclusion, a defendant in a tort action would be permitted to engage in oral, ex parte, face-to-face communications with the plaintiff's health-care providers, without providing notice. The majority opinion specially notes the language of LSA-R.S. 13:3734(B), referring to all "noncriminal proceedings." That term includes tort actions, in addition to worker's compensation actions.
The true issue in the instant case is whether any provision of Louisiana law allows the representative of an employer's worker's compensation insurer to engage in ex parte, oral, face-to-face communications with a person or persons who provided health care services to an employee who has a worker's compensation claim against that employer, without even providing notice to the employee or allowing the employee or his attorney to attend the meeting. The majority would allow such communications; that decision is based on an improper interpretation of the definitions section of La. C.E. art. 510, which establishes Louisiana's health care provider-patient privilege.
Louisiana's health care provider-patient privilege is set out in La. C.E. art. 510(B)(1) as follows:
In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
La. C.E. art. 510(A)(8)(a)(i), which is the entire basis of the majority's decision on this issue, defines a "confidential communication" which is protected by the above privilege as follows:
(a) "Confidential communication" is the transmittal or acquisition of information not intended to be disclosed to persons other than:
(i) A health care provider and a representative of a health care provider.
Citing the above provision, the majority concludes that the defendant in the instant case did not invade the plaintiff's right to privacy because the information which the defendant received in her oral, ex parte, face-to-face communications with the plaintiff's physician, did not qualify as a protected "confidential communication." In reaching that conclusion, the majority cites the Official Comment to the article, which says that the term "health care insurer" is "broader than entities denominated as insurance companies," and "includes any entity that provides indemnification to patients, hence including self-insurers and government plans, etc."
However, the instant case does not include a "health care insurer," even under the expanded definition of that term set out in the Official Comment. The defendant in this case is a representative appointed by the plaintiff's employer's worker's compensation insurer. The plaintiff is currently engaged in an adversarial proceeding against her employer. The obvious intent of the provision defining confidential communications is to allow a physician to communicate with representatives of entities that are directly responsible for insuring a party's health care, whether that person is a health insurance company, a self-insurer, or a government plan.
All of the entities mentioned in the Official Comment to La. C.E. art. 510(A)(8)(a)(i) have a direct relationship to the plaintiff. The defendant's relationship to the plaintiff in this case could hardly be more indirect. The entity standing between the plaintiff and defendant in this casethe employeris actually adverse to the interests of the plaintiff. Equating the defendant in this case with the entities allowed to have direct communications with a party's physician under La. C.E. art. 510(A)(8)(a)(i) requires an unconscionable leap of logic.
Moreover, the provisions of La. C.E. art. 510(B)(2)(a) indicate that the mention of "health care provider" in the definition established by La. C.E. art. 510(A)(8)(a)(i) is not intended to include worker's compensation insurers and their representatives. La. C.E. art. 510(B)(2) establishes exceptions to the general privilege. La. C.E. art. 510(B)(2)(a) describes one of those exceptions as follows:
When the communication relates to the health condition of a patient who brings or *26 asserts a personal injury claim in a judicial or worker's compensation proceeding.
The fact that a special exception is established for patients asserting a worker's compensation proceeding indicates that the phrase "health care provider" in the definition of a "confidential communication" is not intended to include worker's compensation insurers; otherwise, there would be no need for the exception. Further, C.E. art. 510(B)(2)(a) indicates that the same rules apply to the adverse party in a worker's compensation proceeding as those which apply to a regular tort action, "a personal injury claim in a judicial ... proceeding."
Moreover, the fact that La. C.E. art. 510(B)(2)(a) excepts communications related to the health condition of a patient asserting a worker's compensation claim from the general health care provider-patient privilege does not automatically give the representative of an employer's worker's compensation insurer (or the defendant in a tort action) the right to engage in oral, ex parte, face-to-face communications with the employee's (or plaintiff's) doctor without giving any notice to the adverse party. The exceptions established by La. C.E. art. 510(B)(2) are further explained by La. C.E. art. 510(E), which limits the exceptions to the privilege "to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Art. 1421 et seq., or pursuant to R.S. 40:1299.96 or R.S. 13:3715.1." Unless the method of obtaining information is established by one of the named provisions, the method is not authorized by the statutory waiver of the privilege established by the exceptions for limited purposes when the plaintiff or employee asserts a personal injury claim in a judicial or worker's compensation proceeding.
The approved methods for obtaining information ordinarily protected by the health care provider-patient privilege are clearly restricted by La. C.E. art. 510(E) to testimony at trial, and discovery methods authorized by the discovery procedure established by La. C.C.P. art. 1421 et seq., as well as LSA-R.S. 40:1299.96 or LSA R.S. 13:3715.1. Obviously, the regular discovery procedure in La. C.C.P. art. 1421 et seq. does not authorize oral, ex parte, face-to-face communications between a defendant and the plaintiff's doctor, or between a representative of a worker's compensation claimant's employer's worker's compensation insurer and the claimant's doctor. The regular discovery procedures allow defendants to obtain medical information concerning plaintiffs through such procedures as interrogatories, requests for records, and depositions. In fact, La. C.C.P. art. 1421 lists the permissible discovery methods as follows:
depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; request for release of medical records; and requests for admission. Unless the court orders otherwise under Article 1426, the frequency of use of these methods is not limited.
LSA-R.S. 40:129996, relative to records of health care information, requires health care providers to furnish information to patients and their legal representatives in medical malpractice cases. LSA-R.S. 13:3715.1 delineates the procedure by which a party may obtain hospital or medical records from a non-party physician or hospital by way of a subpoena duces tecum. Thus, La. C.E. art. 510 does not allow the procedure utilized by the representative of the employer's worker's compensation insurer in the instant case.
Because the instant case involves a worker's compensation proceeding, LSA-R.S. 23:1127, which is not referenced in the majority opinion, is the proper provision governing the controversy raised by the instant case. That statutes provides, in pertinent part, as follows:
A. In any claim for compensation, a health care provider who has at any time treated the employee shall release any requested medical information and records relative to the employee's injury, to the employee, employer, or its worker's compensation insurer or the agent or representative of the employee, employer, or its worker's compensation insurer. Any information *27 relative to any other treatment or condition shall be available to the employer or his worker's compensation insurer by subpoena or through a written release by the claimant.
B. Any medical information released pursuant to this Section shall be released in writing and a copy shall be furnished to the employee at no cost to him simultaneously with it being furnished to the employer or its insurer.
Once again, nothing in the above statute allows the representative of the employer's worker's compensation insurer to engage in ex parte, oral, face-to-face conversations with the employee's physician. Although the representative is entitled to "requested medical information and records relative to the employee's injury," nothing in the statute indicates that that information can be gained by the method employed by the case manager in the instant case.
In fact, any reasonable interpretation of LSA-R.S. 23:1127 would prohibit the communications at issue here. According to § (A) of that provision, an employee, employer, or an employer's worker's compensation insurer or their representative may obtain requested medical information concerning a claimant only "by subpoena or through a written release by the claimant." Moreover, according to § (B), all information released must be "in writing," meaning no oral communications. In addition, the employee is entitled to receive a copy of the information. In my view, "a copy" means the exact information received by the representative, not some document which reflects the agreement between the case manager and the physician concerning the subject of their communications.
Besides the fact that the case manager's actions in this case were not authorized by the applicable statutes, allowing those actions establishes a very dangerous precedent, which is always prejudicial to the injured employee, who the worker's compensation laws were designed to protect. The issues raised overlap into professionalism and ethical questions related to the practice of personal injury law on all levels. Although the codal and statutory scheme was obviously designed to simplify the discovery process in personal injury cases, whether filed under tort or worker's compensation law, they were never intended to allow uncontrolled investigatory behavior, which is invariably contrary to the interests of the worker's compensation claimant or plaintiff.
For example, allowing oral, ex parte, face-to-face communications between the representative of an adverse party and a workers' compensation claimant's physician, as the majority would allow, removes any element of control from the information-gathering process. An investigator would be free to engage in unlimited discussion of the claimant's medical history with the claimant's doctor, without the claimant's knowledge. The risk that unrelated medical information adverse to the claimantsuch as a past psychiatric conditionwould be revealed is greatly increased by the majority's rule. Medical information is protected by the patient-physician privilege for two obvious reasons: (1) medical information may be embarrassing to the patient, and (2) the privilege promotes full disclosure between patients and physicians. Much of the information in a physician's file might be completely unrelated to the workers' compensation claim made. Obviously, an investigator representing a party adverse to a claimant will naturally seek as much negative and discrediting medical information as he can possibly gain to use against the claimant. The control allowed by the pertinent rules are completely removed under the majority's rule.
The defendant in the instant case was entitled by the laws cited above to obtain medical information concerning the plaintiff by one of two methods: subpoena or through written release from the plaintiff. In this case, the plaintiff specifically refused to provide the necessary written release. Any direct communications between a claimant or plaintiff's physician and the adverse party must be noticed and the claimant or plaintiff must be allowed to attend. This is especially true in the instant case, where the case manager specifically agreed with the claimant's attorney that she would not engage in ex parte communications. Accordingly, I believe that the trial court judgment should be reversed. Certainly, on the basis of the record as it *28 now stands, the case manager is not entitled to summary judgment.
NOTES
[1] La. 23:1032(B) provides that "Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act."