# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 05-760


**GREGORY J. HEBERT**

**VERSUS**

**CONNER-MONCEAUX GENERAL CONTRACTORS**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 03-05420
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.



**AFFIRMED.**

**Thomas Joseph Solari**
**Woodley, Williams Law Firm**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**(337) 433-6328**
**Counsel for Defendants/Appellees**
**Conner-Monceaux General Contractors**
**The Louisiana Workers' Compensation Corporation**

**Kevin Louis Camel**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**Counsel for Plaintiff/Appellant**
**Gregory J. Hebert**

**EZELL, JUDGE**.

The issue in this workers' compensation case concerns the termination of Greg Hebert's benefits based on a finding by the workers' compensation judge that Greg and his wife Patricia made material misrepresentations in order to obtain payment for attendant care services. Mr. Hebert claims Dr. James Perry's testimony should not have been admitted due to improper communication by the Louisiana Workers' Compensation Corporation with Dr. Perry and the physical therapist. Without Dr. Perry's testimony, Mr. Hebert claims that there is no proof of fraud.

## FACTS

Mr. Hebert was employed as a carpenter for Conner-Manceaux General Contractor. While working on January 13, 2000, Mr. Hebert fell twenty-nine feet from a roof sustaining injuries to his arms, legs, head, and back. Mr. Hebert suffered multiple fractures of both legs and both arms and two separate fractures of his vertebrae. He also suffered a traumatic brain injury. He was treated and stabilized in Lake Charles by Dr. Perry, an orthopedic surgeon, and then sent to Houston for specialized treatment of his ankle. On May 22, 2001, Mr. Hebert resumed follow-up treatment in Lake Charles with Dr. Perry.

At that time, Mr. Hebert still had problems with his legs and some residual problems with his back fracture. During the next several visits with Dr. Perry, Mr. Hebert did not show much improvement. Mr. Hebert was always in a wheelchair on his visits to Dr. Perry's office.

On March 4, 2002, Dr. Perry wrote an order for attendant care because Mr. Hebert was unable to care for all of his personal needs. Dr. Perry testified that Mrs. Hebert requested the order and he complied because it was his understanding that Mr. Hebert could not care for any of his own needs. As of June 25, 2002, Dr. Perry

1

opined that Mr. Hebert had reached maximum medical improvement but that he still suffered with some residual abnormalities from the fractures.

As a result of Dr. Perry's order for attendant care, Mrs. Hebert was paid $5.15 an hour for ten hours a day, seven days a week by the Louisiana Workers' Compensation Corporation (LWCC). It was decided that Mrs. Hebert would quit her job with the Calcasieu Parish School Board as a cafeteria technician to take care of her husband.

On August 16, 2002, Mrs. Hebert returned to her employment with the school board. However, she continued to receive payment from the LWCC for the attendant care services.

Around June 2002, the LWCC became suspicious that Mr. Hebert was functioning better than his medical reports indicated. The LWCC began video surveillance on Mr. Hebert, which lasted for a year. The video was shown to Dr. Perry in addition to Rusty Eckels, a physical therapist who performed a functional capacities evaluation on Mr. Hebert on June 3, 2003. Based on the video and the meetings with these healthcare professionals, Mr. Hebert's temporary total disability benefits (TTD) were terminated on July 11, 2003. Attendant care benefits were last paid on July 30, 2003.

On July 30, 2003, Mr. Hebert filed a disputed claim for compensation with the Office of Workers' Compensation. In April 2004, the LWCC filed a third-party demand against Mrs. Hebert, in addition to filing a separate formal claim against Mrs. Hebert. The two cases were consolidated.

Trial was held on October 13, 2004. The workers' compensation judge (WCJ) took the matter under advisement and issued oral reasons for judgment on December 13, 2004. The WCJ held that the Heberts violated La.R.S. 23:1208 by continuing to

2

accept the attendant care payments after Mr. Hebert's condition improved to the point that he could drive and shop. The WCJ ordered restitution of all attendant care payments made to Mrs. Hebert from July 18, 2002 to August 2, 2003, in the amount of $18,746, and forfeiture of all benefits after July 12, 2003. The Heberts were also ordered to pay $7,500 in investigation and litigation costs. Mr. Hebert appealed the judgment.

**IMPROPER COMMUNICATION WITH HEALTH CARE PROVIDERS**

Mr. Hebert argues that the testimony of Dr. Perry and the surveillance video should not have been admitted because representatives of the LWCC met with them without any notice to him in violation of the health care provider-patient privilege of La.Code Evid. art. 510. Mr. Hebert claims that the LWCC failed to meet its burden of proof under La.R.S. 23:1208 without Dr. Perry's testimony.

In June 2003, David Lorino, a claims specialist with the LWCC, and Fabian Blache, also with the LWCC, met with Dr. Perry to show him the video. After viewing the video, Dr. Perry ordered a functional capacity evaluation (FCE). The FCE was performed by Mr. Eckels. Mr. Lorino and Mr. Blache then showed the video to Mr. Eckels.

Louisiana Code of Evidence Article 510(A)(8)(a)(iv) provides that there is not a confidential communication when there is a transmittal of information to "[a] patient's health care insurer, including any entity that provides indemnification to a patient." Comment (h) to Article 510 further provides that "[t]he phrase 'health care insurer' in Paragraph (A)(8)(a)(iv) is broader than entities denominated as insurance companies, and, as this Paragraph expressly states, includes any entity that provides indemnification to patients, hence including self-insurers and government plans, etc."

3

In *Farr v. Riscorp*, 97-2164 (La.App. 4 Cir. 4/8/98), 714 So.2d 20, *writ denied*, 98-1232 (La. 6/26/98), 719 So.2d 1058, the fourth circuit held that a workers' compensation carrier met the definition of a health care insurer since it was statutorily obligated to provide medical benefits to employees for on-the-job injuries. We agree and find that Mr. Hebert is not protected by the health care provider-patient privilege afforded by Article 510. Therefore, there was no confidential communication with Dr. Perry and Mr. Eckels and we agree with the WCJ's decision to admit the video and Dr. Perry's testimony.

## FORFEITURE OF BENEFITS

Mr. Hebert argues that the WCJ erred in finding that he and his wife violated La.R.S. 23:1208. He claims that the evidence is clear that he and his wife did not make any misrepresentations with regard to his medical condition. The whole issue surrounds the payment of attendant care benefits to Mrs. Hebert to care for Mr. Hebert.

In finding that the Heberts committed fraud in continuing to accept attendant care benefits the WCJ stated:

> As earlier stated, L.W.C.C. agreed to pay Mrs. Hebert attendant care payments because she had taken leave of absence from work and was staying with her husband. Unbeknownst to L.W.C.C., Mrs. Hebert returned to her employment for the Calcasieu Parish School Board on August the 16th, 2002, a fact she apparently did not reveal until over a year later. Instead, she continued to provide handwritten time sheets to justify payments for her being a full-time caregiver for her husband at a time when she was elsewhere.

> The medical evidence certainly supports Mr. Hebert's argument that he probably cannot return to the type of physical work he has done all his life. Dr. Mayes, his pain management physician, and Dr. Charles Robinson, his psychiatrist, have not released him to return to any employment. There's no question that his 29-foot fall from a roof during which he seriously injured most of his body has taken its toll. But, that's a given. This trial concerns whether or not he willfully misrepresented his medical condition in order to get benefits. He obviously was in much better condition than his treating physician

4

thought he was. Is it fraud when a patient fails to inform his physician of his improved circumstance? In the abstract, the answer is probably not, if that's all that happened. But, as I have said earlier, this is an unique situation.

L.W.C.C. approved and paid for attendant services based on the representation that Mr. Hebert was incapable of taking care of himself, unable to perform even the most basic human tasks such as shaving and bathing. L.W.C.C. did so at the request of Dr. Perry, the physician who was most familiar with Mr. Hebert's physical condition. The incontrovertible fact is that long after Mr. Hebert progressed from being for all practical purposes a semi-invalid to being able to drive and shop, the Heberts continued to collect the money for paid attendant care. The jurisprudence provides that inconsequential oversights and lapses in memory might be a reasonable controversion of a fraud allegation, but there's nothing inconsequential about this situation. L.W.C.C. does not argue that Mr. Hebert has somehow morphed into a state of wholeness and wellness. It is recognized he still has problems. However, the argument, succinctly paraphrased, is that the attendant care subsidy was never intended to augment indemnity payments. It was not a bonus. It was the payment for a medical treatment necessity. And long after the need for the care ended, Mr. Hebert continued to take the money. Now, that's misrepresentation of the type described by provisions of Section 23:1208. I'm not suggesting that every action Mr. and Mrs. Hebert took in the course of these three years was laced with fraudulent intent, but improperly taking the attendant care money was. It would take a lot of convincing to persuade me that L.W.C.C. and Dr. Perry, neither known for exuberant and irrational liberality in matters of this sort, would have ever recommended and paid for attendant care for the person I saw in the video tapes.

In *Resweber v. Haroil Construction Company*, 94-2708, p.7 (La. 9/5/95), 660

So.2d 7, 12, the supreme court discussed application of La.R.S. 23:1208 as follows:

Section 1208 clearly applies to *any* willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, *i.e.*, statements other than those relating to prior injuries. The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers' compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.

5

Mrs. Hebert testified that her husband started driving when his mother died because he got his mother's car. Mr. Hebert's mother died on July 25, 2002. She went back to work on August 16, 2002, where she worked six hours a day. The FCE was conducted by Mr. Eckels at Advanced Rehab Services. The FCE report indicates that on the day of testing, June 4, 2003, Mr. Hebert "demonstrated crying and verbalizations of 'I can't do anything' and also strongly voiced 'Why won't ya'll leave me alone'"[.] The report indicates that the wife reported that this was an average day for Mr. Hebert. It is also noted in the report that Mr. Hebert's wife drove him to the evaluation because he does not drive.

On June 9, 2003, Advanced Rehab Services called to check on Mr. Hebert. Mrs. Hebert reported that Mr. Hebert had to stay in bed from Wednesday to Sunday following the FCE. However, the video admitted into evidence indicates that the day after the FCE testing, Mr. Hebert was driving around town running errands and purchasing four, twelve-packs of drinks which he carried out and placed in his vehicle by himself.

Dr. Perry saw Mr. Hebert twice after he reviewed the video, June 25 and July 8, 2003. On the July 8 visit, Mr. Hebert used a walker. Dr. Perry observed that Mr. Hebert was able to walk well without much limp in the video. While Dr. Perry agreed that Mr. Hebert does have some residual problems and is probably only able to perform light-duty work, he opined that Mr. Hebert's complaints in the office did not fit with what he saw in the video. Dr. Perry testified that, based on what he saw in the video, Mr. Hebert did not need attendant care. He explained that attendant care is for someone who is severely impaired or critical and cannot care for any of his own needs.

6

Based on the trial testimony and evidence in the record, we cannot say that the WCJ committed manifest error in finding that the Heberts violated La.R.S. 23:1208 by continuing to accept attendant care benefits and providing the health care providers with information that Mr. Hebert was not able to do anything for himself. There was a consistent pattern exaggerating and misleading health care providers about Mr. Hebert's problems and what he could do on a day-to-day basis.

## INVESTIGATION AND LITIGATION COSTS

Mr. Hebert also claims the trial court erred in awarding the LWCC investigation and litigation costs. He contends that La.R.S. 23:1208 does not provide for cost shifting.

Louisiana Revised Statutes 23:1208(D) provides that restitution may be awarded for "benefits claimed or payments obtained through fraud[.]" Furthermore, La.R.S. 23:1208(C) defines "benefits claimed or payments obtained" to also include "reasonable costs of investigation and litigation." Therefore, investigation and litigation expenses may be awarded as restitution. *See Wood v. Brian Harris Autoplex*, 04-1316 (La.App. 1 Cir. 8/3/05), ___ So.2d ___.

## CONSTITUTIONAL ISSUE

Mr. Hebert claims that the Office of Workers' Compensation was enjoined from adjudicating any claims or defenses under La.R.S. 23:1208 pursuant to the Twenty-First Judicial District Court's ruling in *In re Melancon*, Number 2004-003200.

We first note that a constitutional issue decided by a city court, district court, or appellate court is not binding on the courts of co-ordinate jurisdiction. *City of Shreveport v. Baylock*, 107 So.2d 419 (La.1958). Furthermore, this court, in an *en banc* decision, determined that the Office of Workers' Compensation has subject-

matter jurisdiction to adjudicate claims under La.R.S. 23:1208. *Lanthier v. Family Dollar Store*, 02-429 (La.App. 3 Cir. 1/8/03), 848 So.2d 605. Therefore, we find that this assignment of error has no merit.

For the reasons expressed in this opinion, we affirm the decision of the Office of Workers' Compensation. Costs of this appeal are assessed to Gregory Hebert.

**AFFIRMED**.