771 So.2d 863 (2000)
Patsy EICHELBERGER, Plaintiff-Appellant,
v.
Georgia SIDNEY and National Hair Care Center, Inc., Defendants-Appellees.
No. 34,040-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 2000.
Rehearing Denied November 30, 2000.
*864 Street & Street by C. Daniel Street, Monroe, Counsel for Appellant.
Snellings, Breard, Sartor, Inabnett & Trascher, L.L.P. by W. Michael Street, Monroe, Counsel for Appellee, National Hair Care Center, Inc.
Charles C. Trascher, III, Monroe, Counsel for Georgia Sidney.
Before CARAWAY, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
This action arose out of a physical altercation between co-employees of Defendant National Hair Care Center, Inc. ("National") which resulted in personal injury to Plaintiff, Patsy Eichelberger. Ms. Eichelberger filed suit against her fellow employee, Defendant Georgia Sidney, and National for damages sustained by her as a result of the intentional tort committed by Ms. Sidney. National filed a third party demand against its insurer, American Casualty Company ("American"). American filed a motion for summary judgment which was granted by the trial court, thereby dismissing it from the law suit. National then filed a motion for summary judgment alleging that, based on the facts as stated in Ms. Eichelberger's petition, it was not vicariously liable for Ms. Sidney's intentional tort as a matter of law. The trial court granted National's motion, without written reasons, thereby dismissing it from the law suit. The judgment granting National's motion was certified as final and Ms. Eichelberger now appeals that judgment.[1] For the reasons stated herein, the judgment of the trial court is affirmed.

FACTS
Ms. Eichelberger and Ms. Sidney were both employed by National at the time of the incident, June 28, 1995. The two women worked in National's salon located in the super WalMart store in Monroe. Ms. Eichelberger was a hairdresser and Ms. Sidney was a receptionist. According to the petition, the following events took place on the day of the incident:
At all times pertinent hereto, on or about June 28, 1995, Patsy Eichelberger while acting in her course of employment as a licensed beautician, requested GEORGIA SIDNEY, who was employed as a receptionist, to select and place a movie into a video player to entertain the children of a customer to whom Patsy was applying a "permanent wave" to her hair. Georgia Sidney ignored Patsy's request to install the movie several times; therefore, Patsy Eichelberger, herself, retrieved a movie and placed it into the video cassette player. As Patsy Eichelberger stood up from the cassette player, Georgia Sidney walked over and suddenly grabbed Patsy by her arm and demanded to talk with her in a private office. Patsy refused and attempted to pull herself away from Georgia Sidney's grasp, but was unable and was physically pulled into a private office inside the hair salon where Georgia Sidney closed the door. Once inside, Georgia Sidney slapped, kicked and punched Patsy Eichelberger about the head, neck, back and knees. As a result of these intentional acts of violence, Patsy Eichelberger received numerous physical injuries which are made the subject of this petition (hereinafter sometimes referred to as the "Subject Assault and Battery").
As previously stated, taking the above version of facts as true, National filed a motion for summary judgment arguing that the undisputed facts established as a matter of law that Ms. Sidney's intentional acts were not within the scope of her employment and, therefore, National was not vicariously liable for any damages suffered by Ms. Eichelberger as a result of those intentional acts. After argument, *865 the trial court granted the motion without written reasons.[2]

DISCUSSION
We review summary judgments de novo under the same criteria that govern the district court's consideration of the appropriateness of summary judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.3/31/99), 731 So.2d 482.
The legal principles regarding summary judgment are well settled. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Mixon v. Progressive Specialty Co., 29,698 (La.App.2d Cir.6/18/97), 697 So.2d 662.
The burden is on the party seeking summary judgment to establish that there is an absence of factual support for one or more of the essential elements of the adverse party's claims. When a motion for summary judgment has been filed and supported by evidence, however, the adverse party may no longer rely on the mere allegations or denials of his pleadings, but, through affidavits or otherwise, must set forth evidence demonstrating there is a genuine issue for trial. La. C.C.P. art. 967; Simoneaux v. E.I. du Pont de Nemours and Co., Inc., 483 So.2d 908 (La. 1986); Berzas v. OXY USA Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149. If the nonmoving party then fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966; Berzas, supra. Although the burden of proof remains the same under the recent amendment to La. C.C.P. art. 966, summary judgment procedure is now favored to secure the just, speedy and inexpensive determination of all except certain disallowed actions. Acts 1996, 1st Ex.Sess., No. 9.
As a threshold matter, we note that Ms. Eichelberger argues that granting the motion for summary judgment was error because National filed no supporting documentation with the motion. Since no depositions were filed and no affidavits were attached to the motion, Ms. Eichelberger submits that National completely failed to carry its burden. We disagree.
National's motion for summary judgment states that "the pleadings on file in the record hereof and the attachments hereto show that there is no genuine issue as to a material fact and that mover is entitled to judgment as a matter of law." Attached to the motion was the memorandum in support thereof wherein National quoted the facts as alleged in Ms. Eichelberger's petition for damages, stating that "[s]olely for the purpose of the instant Motion for Summary Judgment, National Hair Care assumes that the confrontation which occurred between Eichelberger and Sidney occurred in the manner described by Eichelberger in her Petition for Damages, as quoted above." We find that National's failure to file any supporting affidavits or depositions with its motion for summary judgment was not fatal to the motion for the simple reason that National did not dispute the facts as alleged by Ms. Eichelberger as stated in her petition.[3]
Since National accepted as true the version of events as stated in the petition, our next inquiry is whether or not, in opposition to National's motion, Ms. Eichelberger produced factual support sufficient to survive summary judgment. As previously stated, as the nonmoving party, she *866 must present specific facts showing that material facts are still at issue. In opposing National's motion, Ms. Eichelberger produced a portion of her deposition which substantially supports her version of events as alleged in her petition. Additionally, Ms. Eichelberger testified in her deposition that the VCR and videotapes were in the salon for the entertainment of its clients. Moreover, she testified that it was part of Ms. Sidney's duties as receptionist to assist the beauticians when necessary and to keep the customers satisfied. According to Ms. Eichelberger, this would include playing videotapes to entertain the children of clients who were having their hair done in the salon. Ms. Eichelberger asserts that her deposition testimony clearly reveals that National is liable for the intentional tort of Ms. Sidney. Again, we disagree.
An employer can be vicariously liable both for its own intentional acts and the intentional acts of its employees. Jones v. Thomas, 426 So.2d 609 (La.1983). The employer's liability, however, extends only to those acts which are within the course and scope of the injuring employee's employment. La. C.C. art. 2320; Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994; LeBrane v. Lewis, 292 So.2d 216 (La.1974); Miller v. Keating, 349 So.2d 265 (La.1977); Lamkin v. Brooks, 498 So.2d 1068 (La.1986).
Our supreme court has held that, in order for an employer to be vicariously liable for the tortious acts of its employee, the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." LeBrane, supra. An employer is not vicariously liable for the intentional acts committed by its employee unless such employee is acting within the ambit of his or her assigned duties and also in furtherance of his or her employer's objectives. Scott v. Commercial Union Insurance Company, 415 So.2d 327 (La.App. 2d Cir. 1982).
In LeBrane, supra, the supreme court considered the following factors in holding an employer liable for a supervisor's actions of stabbing his co-employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the act was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
It is not necessary that all four factors be met in order to find liability. Miller v. Keating, supra. By the same token, an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (La. 1992); Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.1986), writ denied, 491 So.2d 24 (La.1986); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1321 (La. 1985); Scott v. Commercial Union Insurance Company, supra. The particular facts of each case must be examined to determine whether an employee's act is within the scope of his employment. Barto, supra; Scott v. Commercial Union Insurance Company, supra; Turner v. State, 494 So.2d 1292 (La.App. 2d Cir. 1986).
Simply stated, we need not find all four LeBrane factors in order to conclude that National is vicariously liable for the intentional tort committed by Ms. Sidney. The presence, however, of only factors three and four is not enoughwe must also find that either factor one or two is present. In this case, clearly factors three *867 and four are satisfied, i.e., the act occurred on National's premises and during working hours. After reviewing numerous cases applying the factors from LeBrane, supra, we do not find, however, that either factor one or two is present under the facts we have before us.
In the case sub judice, regarding the first factor, that the act be primarily employment rooted, we find that Ms. Sidney's violent attack on Ms. Eichelberger was entirely extraneous to National's interests. The petition alleges that
Ms. Sidney ignored Ms. Eichelberger's request several times. In opposition to National's motion, Ms. Eichelberger produced a portion of her deposition which includes the following testimony:
Q: All right. So you asked [Ms. Sidney] to put the video in the VCR for the children?
A: Yes, sir.
Q: Did she refuse?
A: Yes, sir. She said that she would do it when she got time. She was talking to her boyfriend.
Clearly, Ms. Sidney refused to perform the task that Ms. Eichelberger requested of her and Ms. Eichelberger assumed the task. Although it may have been within the scope of Ms. Sidney's duties to put a videotape in the VCR to entertain a client's children, it was not a reasonably foreseeable event that Ms. Sidney would violently attack Ms. Eichelberger because she chose to put in the videotape herself after Ms. Sidney refused to do so. The likelihood that Ms. Sidney would become enraged when her co-employee attempted to place a videotape in the VCR, especially after she had refused to do so herself, is not a "risk fairly attributable to the performance" of her duties. Baumeister, supra.
We note also that, in one respect, Ms. Eichelberger's deposition testimony differs somewhat from the scenario as described in her petition. In her deposition testimony, Ms. Eichelberger indicates that she did not, in fact, place the videotape in the VCR because Ms. Sidney blocked the recorder:
Q: Well, you never did put the movie in the VCR, then?
A: No. She had her hand over the hole. I couldn't.
We do not find, however, that this discrepancy creates an issue of material fact because the additional facts as described by Ms. Eichelberger in her deposition testimony actually worsen her position as it relates to any potential vicarious liability on the part of National. If Ms. Sidney did attempt to block or prevent Ms. Eichelberger from inserting the videotape, as the above-quoted testimony indicates, this fact does not support a finding that the subsequent intentional tort was employment rooted or that it was incidental to the performance of Ms. Sidney's duties. To the contrary, we believe that such facts remove any connexity between any possible employment issue and Ms. Sidney's violent attack on Ms. Eichelberger. Ms. Sidney's initial refusal to put in the videotape was not within the ambit of her assigned duties, but was actually contrary to them. See Scott v. Commercial Insurance Company, supra. Furthermore, we find that, if Ms. Sidney did block the VCR, thereby preventing Ms. Eichelberger from inserting the videotape, this action was certainly not in furtherance of National's objective of keeping customers satisfied by entertaining their children. Scott v. Commercial Union Insurance Company, supra. In fact, Ms. Sidney's actions actually obstructed the achievement of National's objective.
In reaching the conclusion that neither factor one nor two from LeBrane, supra, are present in the case sub judice, i.e., that the intentional tort was not employment rooted, nor was it reasonably incidental to the performance of Ms. Sidney's duties, we are guided not only by prior supreme court decisions, but also several decisions by our court and our brethren from various other circuits. In Baumeister, supra, an employee was sexually assaulted by a *868 co-employee. The trial court held the employer vicariously liable and this court affirmed. The supreme court reversed, however, finding that neither the first nor second factor from LeBrane was present. Regarding the "incident to performance of duties" factor, the supreme court acknowledged that a supervisor may reasonably become involved in a dispute with a "recalcitrant underling." Baumeister, however, involved sexual assault which the supreme court found to be entirely extraneous to the employer's interest and not a case where a supervisor's performance duties led to an intentional tort.
While we acknowledge that sexual assault among co-employees is more clearly motivated by personal concerns than many other types of intentional acts between co-employees, the reasoning utilized by the Baumeister court has been applied consistently to other factual scenarios. For example, in Watkins v. International Service Systems, 32,022 (La.App.2d Cir.6/16/99), 741 So.2d 171, writ denied, 99-2129 (La.10/29/99), 749 So.2d 640, a supervisor questioned a janitorial employee about missing radios. The supervisor suspended the employee pending an investigation of the matter and the employee attacked the supervisor. The trial court granted the employer's motion for summary judgment and this court affirmed, relying, in part, on Baumeister. In Watkins, we concluded that the employee's duties entailed cleaning bathrooms and offices, not stealing radios and kicking his supervisor. We further held that, even though the supervisor was within his duties in suspending the employee, the employee's response had no root in an employment endeavor, but was motivated by purely personal concerns. Finally, we held that the battery did not further any interest of the employer.
Similarly, in Barto v. Franchise Enterprises, Inc., supra, a supervisor saw a cook exit the office area in a fast food restaurant. After finding money missing from a cash drawer in the office, the supervisor questioned the cook regarding the missing money. As the cook emptied his pockets to show the supervisor that he did not have the money, he pulled out a knife and began stabbing the supervisor. The trial court denied the employer's motion for summary judgment on the issue of vicarious liability, specifically, the issue of course and scope. This court reversed, holding that the employee's acts of stealing money and stabbing his supervisor during the investigation of the matter was "clearly beyond" the course and scope of the employee's employment and was not incidental to the performance of his duties. Holding that the intentional tort was "clearly motivated" by personal motives to take money from the business, we found that, on the evidence presented with the motion for summary judgment, the employer was not vicariously liable for the employee's intentional tort and was entitled to judgment as matter of law.
We also find the recent case of Ryback v. Belle, 98-2766 (La.App. 1st Cir.2/18/00), 753 So.2d 383, writ denied, XXXX-XXXX (La.5/12/00), 762 So.2d 14, to be very similar to the present case. In Ryback, co-employees of Winn-Dixie were unloading items from a truck into a walk-in freezer. Ryback attempted to exit the freezer with a pallet jack, accidentally closing the freezer door while Belle was inside. Belle came out of the freezer threatening Ryback and subsequently attacked and beat him. Relying, in part, on Baumeister, supra, the first circuit held that the employer was not vicariously liable. The court explained:
In this case, as in Baumeister, serving the master's business did not actuate the servant at all, much less to any appreciable extent. This is not a case where a supervisor's performance of his duties, such as disciplining or threatening to discipline an insubordinate employee, leads to an intentional tort.
The court further concluded that "[t]he likelihood that an employee will become enraged when his co-employee accidentally closes the freezer door on him, and that the employee will then viciously attack his *869 co-employee, is not a risk fairly attributable to the performance of the employee's duties."[4]
The supreme court has found employers vicariously liable for intentional torts of their employees in at least two cases; however, the facts in those cases are not identical to the ones presented in this case. First, in LeBrane, supra, LeBrane showed up for work late and Lewis, his supervisor, told him to leave and get a haircut. LeBrane would not leave and Lewis fired him, had him sign a termination slip and took him upstairs to the office for his termination pay. On the way back down in the elevator, an argument ensued and, once outside, the two starting fighting. Lewis, the supervisor, stabbed LeBrane. The trial court found no liability on the part of the employer and the court of appeal affirmed. The Supreme court reversed, holding that the dispute was employment related; that discharging the employee and ordering him off the premises was within the course and scope of supervisory employee's employment; and that the fight was reasonably incidental to the performance of the supervisor's duties in firing the recalcitrant employee and causing him to leave the premises. Significantly, and unlike the case before us, the injuring employee in LeBrane was the supervisor. The altercation occurred as an extension of the performance of his duties in discharging the employee. In the present case, the dispute was between co-employees of the hair salon. While, arguably, as a hairdresser, Ms. Eichelberger may have had some type of superior position to Ms. Sidney as receptionist, it was Ms. Sidney who committed the intentional tort, not Ms. Eichelberger. Additionally, we emphasize again that Ms. Sidney either ignored or refused Ms. Eichelberger's request that she put in the videotape, a task which Ms. Eichelberger claims was part of Ms. Sidney's job duties. We believe it *870 unreasonable to say that Ms. Sidney's attacking her co-employee for performing a task which she refused to do herself was a foreseeable extension of the performance of Ms. Sidney's job duties.
Second, in Benoit v. Capitol Manufacturing Co., 617 So.2d 477 (La.1993), rehearing granted in part (3/13/93), two co-workers were on break and got into an argument over whether to leave the door open or closed for reasons of temperature. An altercation ensued and one employee struck the other with a broomstick. The trial court found that the altercation was purely personal and, therefore, found that the employer was not vicariously liable and the court of appeal affirmed. Relying on LeBrane, the supreme court reversed that portion of the judgment, holding that the intentional act was "clearly employment rooted" and that the employment issue was temperature in the workplace. The employer was liable, therefore, in solido with the injuring employee for damages. The circumstances precipitating the altercation in Benoit, however, are distinguishable from the altercation between Ms. Sidney and Ms. Eichelberger. In Benoit, there had been previous disputes, between other co-employees, over whether this particular door should remain open or closed. In fact, prior to the incident occurring, a supervisor had instructed Bennett to put on a jacket if he was cold with the door open. Despite this instruction, Bennett remained intent on closing the door and, in fact, told another of his co-workers that "[o]ne way or another, I am going to close the (expletives deleted) door." The altercation between Bennett and Benoit occurred shortly thereafter when Bennett went on break, attempted to close the door and Benoit tried to keep it open. The dispute was reasonably foreseeable and centered on whether or not to follow the instruction of the supervisor, or the policy, that the door be kept open.
In contrast to the Benoit case, where there was a dispute as to whether to open or close the door, in the case sub judice, there was no dispute as to whether or not the videotape should be played for the children's entertainment. In other words, the intentional tort in this case did not involve a "dispute" over an employment issue.
In summary, under either of Ms. Eichelberger's versions of events, i.e., the scenario provided in the petition or the scenario described in her deposition, we find neither factor one nor two of the LeBrane test to be present. The attack was not employment rooted nor was it incidental to the performance of Ms. Sidney's duties. Moreover, Ms. Sidney's violent, unexpected reaction to Ms. Eichelberger's attempt to insert the videotape was a completely unexpected and unforeseeable response under the circumstances and, as previously stated, certainly was not a risk "fairly attributable" to the performance of Ms. Sidney's job duties. See Ryback v. Belle, supra. On the record before us, we find, therefore, as a matter of law that National is not vicariously liable for the intentional tort committed by Ms. Sidney.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of National Hair Care Center, Inc., is affirmed. Costs are assessed against Plaintiff/Appellant, Patsy Eichelberger.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent since I believe the multi-faceted determination of the course and scope of employment presents a genuine issue of material fact which makes a summary judgment improper in this case. Despite the majority's excellent survey of the jurisprudence which has struggled on the celebrated slippery slope of LeBrane, LeBrane's testing criteria"primarily employment rooted" and "reasonably incidental" *871 to the employee's dutiespresent mixed questions of law and fact which juries should weigh and which are not subjects for summary judgment. Despite the obvious on-the-job tensions between these two employees which were described in the plaintiffs petition, the majority has effectively dismissed the tort claim for no cause of action by weighing those tensions on its scales for reasonable foreseeability. Since critics of LeBrane's policy choice can always argue that violent and intentional employee attacks are never reasonably foreseeable events which should make an employer vicariously responsible in tort, the majority's analysis therefore is basically a rejection of LeBrane. Until LeBrane is overruled by the supreme court, I must vote to allow the fact finder to first wrestle with these cases. Finally, the majority's ability to pronounce as a matter of law the absence of work-related injury in this case might also be used in support of argument against plaintiffs recovery for worker's compensation benefits. Those benefits should remain available to her in view of the supreme court's ruling in Gagnard v. Baldridge, 612 So.2d 732 (La.1993) despite the parallel tests for a LeBrane claim and a worker's compensation claim under La. R.S. 23:1031(A).

APPLICATION FOR REHEARING
Before NORRIS, C.J., GASKINS, CARAWAY, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] Ms. Sidney remains a defendant in district court.
[2] The transcript of the argument and oral ruling of the trial court is not contained in the record on appeal.
[3] National's acceptance of Ms. Eichelberger's version of the events of June 28, 1995, is limited only to the determination of the motion for summary judgment.
[4] See also Pye v. Insulation Technologies, Inc., 97-237 (La.App. 5th Cir.9/17/97), 700 So.2d 892, writ denied, 97-2571 (La.12/19/97), 706 So.2d 461 (Supervisor reprimanded employee on construction crew and employee asked supervisor why he continued to report him for unsatisfactory performance. Following the confrontation, employee struck supervisor in the head with a piece of wood. Held: Employer was not vicariously liable because the plaintiff failed to establish that the tortious act was employment rooted; the employer derived no benefit from act; hitting one's supervisor is "entirely extraneous" to employer's interest.); Francioni v. Rault, 570 So.2d 36 (La.App. 4th Cir.1990), writ denied, 575 So.2d 371 (La.1991) (Accountant had been embezzling money from employer. Co-employee discovered this and accountant murdered her. Held: Fourth circuit affirmed summary judgment in favor of employer, finding that employee's function as accountant did not include embezzlement of money; therefore, murder was not employment-rooted and was motivated purely by personal interests.); Affeltranger-Cheramie v. Zachary, 99-1090 (La. App. 3d Cir.2/2/00), 757 So.2d 751,757 So.2d 751 (A teacher at a junior high school confronted another teacher about the latter's using the former's name to get a videotape from another teacher. Ultimately, a physical altercation occurred between the two teachers. Held: Third circuit affirmed summary judgment in favor of the school board, finding that, while factors three and four from LeBrane were met, neither factor one nor two was present. Specifically, the court held that an altercation between two professionals charged with the responsibility of educating children is not "foreseeably incidental to the performance of their duties." Additionally, a public altercation between teachers in the presence of students was not employment rooted; rather, it was "in direct conflict with the objectives of the school board."); Hubbard v. Lakeland Nursing Home, 98-1893 (La. App. 3d Cir.5/19/99), 734 So.2d 1280, writ denied, 99-1705 (La.10/1/99), 748 So.2d 442 (Two non-employees were visiting an employee during working hours. The employee's supervisor, advised the employee that this was against company policy. After the visitors left, the employee confronted Hubbard and accused her of being racist. Hubbard reported this to the administrator who, by telephone, told the employee to clock out and go home to avoid any further problems. The employee hung up the phone and physically assaulted Hubbard. Held: Neither factor one nor two from LeBrane was present; the employee's duties did not include striking her supervisor because she believed her supervisor was racist; and, since Lakeland was not the intended beneficiary of the employee's acts, the acts were not employment rooted.)