JjNORRIS, Chief Judge.
Leonard Adams, a sheetrock finisher, allegedly injured his back when he stepped into a depression in the floor on a job site. He sued Bobby L. Greene Plumbing and Heating Co. (“BLG”), the plumbing contractor who removed a hot tub from the place where the depression was located. The workers’ compensation carrier for Adams’s employer, Louisiana Home Builders Association Self-Insurance Fund, intervened to recover compensation benefits paid to Adams. BLG obtained a summary judgment rejecting all claims. Adams and the intervenor now appeal; for the reasons expressed, we affirm.

Factual background

Summerfield Estates, a retirement home in Shreveport, wanted to convert an existing hot tub room and adjacent large restroom into a small guest apartment. This entailed removing the hot tub from the *1091 area that would become a bedroom. Sum-merfield secured Tri-State Aluminum as the general contractor; their agreement stated, “plumbing includes * * * removal of the hot tub from the room.” Tri-State subcontracted the plumbing to BLG and the carpentry and sheetrock work to T.W. Rascoe. Adams was a painter and finisher employed by Rascoe.
On April 29, 1997, one of BLG’s employees, Leland Kelly, went to the site and actually disconnected the hot tub. He stated in deposition that this exposed a “recess” measuring about 12" x 14" x 4" in which the drain pipe was located. Other witnesses, however, described a circular “depression” which had apparently been chiseled out of the concrete for access to the pipe; they estimated its diameter anywhere from 10 inches to three feet. Kelly further testified that based on BLG’s invoices, another employee returned the next day, April 30, to seal the drain pipe. Kelly admitted that he did not fill the recess: “We generally don’t do anything like that.” The plumbers set the shower on May 1 but then did not return to the site until the project was almost complete, to reconnect the toilet and lavatory.
| gRascoe, the carpentry and sheetrock contractor, came to the site a few days after the hot tub was removed; he could plainly see the depression in the middle of the new bedroom. He taped and floated the sheetrock; on May 12, he met Adams at the site and gave him directions on finishing it. He testified that early that morning, the hole was still apparent in the middle of the floor.
Adams, however, testified that there was a pile of fiberglass insulation and concrete fragments in the middle of the floor; he never suspected that it was filling a hole. While carrying a door across the room, he stepped on the pile, lost his balance and stumbled, injuring his back. He has not worked since the day after the accident. He stated in deposition that he was certain the plumbers had made the hole, but did not know who was responsible for filling it. “I’ve seen carpenters do it, too. So the ones that fill it up, that ain’t no big deal as far as * * * license or anything. Anybody can do that.”
Tri-State’s vice-president, Myron Mcln-nis, testified that at one point he saw the drain pipe wrapped with a small piece of insulation and topped with a paint bucket, as though to provide a warning. However, he did not know who did this, and he thought Rascoe removed the wrapping. Kelly did not say anything about wrapping the pipe, and Rascoe denied ever seeing it wrapped.
As noted, the District Court granted BLG’s motion for summary judgment, finding that BLG was indeed subcontracted to perform plumbing on this remodeling of the bathroom and sauna room. However, the court further found that BLG did not create the depression in the drain area and was not responsible for filling or marking it. In short, Adams failed to show that BLG had a duty to fill, guard or mark the drain area.

Discussion

A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the ^affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of all except certain disallowed actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter before the court on motion for summary judgment, then the movant may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiffs claim. *1092 The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain — in the instant case, facts that may create a legal duty. La. C.C.P. art. 966 C(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41.
Louisiana courts apply the duty-risk analysis to determine whether a party is liable for negligence under the facts of a particular case. In order to prevail in a negligence action, the plaintiff must prove (1) the conduct in question was a cause-in-fact of the resulting harm, (2) defendant owed a duty of care to the plaintiff, (3) this duty was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty breached. Peterson v. Gibraltar Sav. & Loan, 98-1601 (La.5/18/99), 733 So.2d 1198, and citations therein. Whether a duty is owed is a question of law. Id.; Hardy v. Bowie, supra. The question is whether the plaintiff has any law — statutory, jurisprudential, or arising from general principles of fault — to support his claim. Id.
In brief, Adams notes that under Tri-State’s contract, the plumbing subcontractor’s obligation is “removal of the hot tub from the room.” He urges |4that this creates an implicit duty to fill the recess or protect it from unsuspecting workers like himself. However, the general contract does not specify this duty and the general contractor did not testify that he expected it of BLG. In short, there is no evidence to show that filling or marking this depression was a contractual requirement.[1] Moreover, there is no evidence that plumbers normally or customarily fill and mark holes in this situation: Kelly testified that plumbers do not usually do this when further flooring work is to be done, and Adams himself testified that carpenters or “anybody” could do it.
In short, BLG has pointed out an absence of evidence of duty, an essential element of the plaintiffs case. The burden shifted, but plaintiff has not established any legal basis for duty, either in contract, statute or jurisprudence. La. C.C.P. art. 966 C(2).
The intervenor urges in brief that although BLG may have owed no contractual or statutory duty to fill or mark the depression, it assumed this duty by placing soft insulation over the. hole and failing to mark it. The intervenor correctly argues that any task voluntarily undertaken must be performed in a reasonable and prudent manner. See, e.g., Rick v. State, 93-1776 (La.1/21/94), 630 So.2d 1271; Slaid v. Evergreen Indem. Ltd., 32,363 (La.App. 2 Cir. 10/27/99), 745 So.2d 793, and citations therein.
Our de novo review of the record, however, finds no summary judgment evidence to suggest that any employee of BLG’s either wrapped the pipe or filled the hole with insulation. Mr. Mclnnis, the general contractor, recalled seeing the pipe wrapped at some point during the project, but he was uncertain when; he did not know who wrapped it, but he thought “the painters” (Adams’s employer, Rascoe) had removed it. Rascoe testified that he never saw insulation wrapped | ¡¡around the pipe or in the depression, and this included the morning of the accident. Kelly, BLG’s plumber, never stated that he applied any insulation to the site. Simply put, there is no summary judgment evidence that BLG may have concealed the hole, only speculation. This is not sufficient to create a genuine issue of material fact.
There was much discussion at oral argument and in brief concerning the question of who actually removed the hot tub from the premises. Although Tri-State’s contract called for the plumber to do this, all witnesses agreed that an employee of *1093 Summerfield’s purchased the tub and physically removed it from the premises. Perhaps for this reason the District Court stated in its reasons for judgment that BLG was “not responsible for removing the hot tub.” This factual discrepancy is not material; it has no bearing on BLG’s duty with respect to the depression. On the summary judgment evidence presented, BLG is entitled to judgment as a matter of law.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are assessed one-half to Leonard Adams, in accord with La. C.C.P. art. 5181 et seq., and one-half to the Louisiana Home Builders Association-Self Insurance Fund.
AFFIRMED.

. The suggestion at oral argument that BLG "should have put rocks or something in the hole” is without record support and would appear to make the situation hazardous.