786 So.2d 245 (2001)
Germaine S. HOLMES, Plaintiff-Appellant,
v.
Elizabeth HARPER, Bessie Adkins and Safeco Insurance Company, Defendants-Appellees.
No. 34,631-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*246 Allan R. Harris, Shreveport, Counsel for Appellant.
Mayer, Smith & Roberts, L.L.P. by John C. Turnage, Shreveport, Counsel for Appellees.
Before BROWN, PEATROSS and KOSTELKA, JJ.
KOSTELKA, J.
Germaine S. Holmes ("Holmes")[1] appeals the trial court's grant of summary judgment in favor of Elizabeth Harper ("Harper"), Bessie Adkins ("Adkins") and Safeco Insurance Company ("Safeco") (collectively "Appellees"), which resulted in the dismissal of Holmes's claims. Finding no error by the trial court, we affirm for the following reasons.

FACTS
Holmes was employed by Harper, Adkins' daughter, and Adkins as Adkins' fulltime *247 sitter. Part of Holmes's duties included coming to Adkins' assistance when called for or when Adkins needed attention. During the night of October 15, 1998, Adkins called out in a loud voice, and while coming to Adkins' assistance, Holmes struck her foot against the leg of Adkins' bed. Allegedly, the room was poorly lit and Holmes was unable to see the bed leg; instead, she was focused upon caring for Adkins.
Holmes alleged that her foot and toe were severely injured, requiring surgery, that her foot and toe have not healed, and that her injury caused her legs to develop an unusual condition due to the unnatural way in which she has to walk. She filed suit, asserting that the cause of her injury was the failure of Harper and Adkins to provide a safe working environment. Holmes also alleged that under the circumstances, the bed leg was in a "dangerous and unsafe condition," and there was a failure to provide adequate lighting in the room under the circumstances, as well as a failure to provide a reasonable safeguard against the risk which Holmes encountered when she was required to rush to Adkins' bed.
After filing a general denial answer, the Appellees subsequently filed a motion for summary judgment. After hearing argument from both sides, the trial court granted the Appellees' motion for summary judgment. The court found there to be no negligence and that the bed leg was not inherently dangerous. This appeal ensued.

DISCUSSION
We review summary judgment de novo under the same criteria governing a district court's consideration of the appropriateness of summary judgment. Eichelberger v. Sidney, 34,040 (La.App.2d Cir.11/03/00), 771 So.2d 863, writ denied, 00-3476 (La.02/09/01), 785 So.2d 827.
A court shall render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See, La. C.C.P. art. 966(B). If the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense, but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that the adverse party will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. See, La. C.C.P. art. 966(C)(2).
Because Appellees, who were the movants for summary judgment in this case, did not have the burden of proof, they only need to point out the absence of factual support for one or more elements essential to Holmes's claim. At that point, the burden shifts to Holmes, and the question becomes whether Holmes produced factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial that Appellees breached their duty to her. The trial court concluded that she did not, and, for the following reasons, we agree.
Holmes argues that Adkins and Harper were negligent in that the leg of Adkins' bed posed an unreasonable risk to her work environment. Moreover, Holmes claims that they were strictly liable to her because the bed leg was not maintained in *248 a safe manner and it was a dangerous instrumentality under the circumstances. She urges that the bed leg was defective for not having a safety cushion or other similar safety device around it.
Louisiana courts apply a duty-risk analysis to determine whether a party is liable for negligence under the facts of a particular case. In order to prevail in an action based on negligence, the plaintiff must prove (1) the conduct in question was a cause-in-fact of the resulting harm, (2) defendant owed a duty of care to the plaintiff, (3) the duty was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty. Adams v. Bobby L. Greene Plumbing and Heating Co., 34,253 (La. App.2d Cir.12/06/00), 775 So.2d 1090, citing, Peterson v. Gibraltar Sav. and Loan, 98-1601 (La.05/18/99), 733 So.2d 1198.
Whether a duty is owed is a question of law. Peterson, 733 So.2d at 1204. In general, the owner of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of harm. Id., citing, St. Hill v. Tabor, 542 So.2d 499, 502 (La. 1989); Harris v. Pizza Hut of Louisiana, 455 So.2d 1364 (La.1984).
Under either theory of negligence or strict liability, whether a risk is unreasonable depends on a balancing of all relevant factors, e.g., the utility of the thing that caused the damage, the intended use of the property, and other social considerations. Ebarb v. Guinn Bros., Inc., 31,426 (La.App.2d Cir.01/20/99), 728 So.2d 487, citing, Oster v. Department of Transp. & Dev., State of La., 582 So.2d 1285 (La. 1991); Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App. 2d Cir.1992).
Although it would appear from her allegations that Holmes's injury was somewhat serious, the risk of injury by the bed leg was very slight, if any. Harper's affidavit established that Holmes had been employed in Adkins' home for three to four years, and never during that time had the furniture in Adkins' room been rearranged. There was no evidence of prior accidents or injuries occurring as a result of the placement of the bed in the room. Moreover, the bed leg itself has an obvious social utility, in that it serves the practical and obvious function of supporting the bed. Holmes's allegation that the bed leg should have been cushioned is unreasonable when one considers that practically every household furnishing in any home consists of legs and other parts which could foreseeably be bumped into accidentally causing injury.
We note that the First Circuit, in considering the risk of a decorative ceramic dish in a backyard, stated: "To impose liability under the facts and circumstances of this case would be tantamount to extending the duty of homeowners to protect against any and all imaginable risks of harm. Not only would this lead to an unnecessary sterilization of our environment, it is contrary to law...." McAllister v. Coats, 96-1069 (La.App. 1st Cir.03/27/97), 691 So.2d 305, 311, writ denied, 97-1356 (La.09/05/97), 700 So.2d 513. So would be the case if liability were imposed in this case. Clearly, Adkins and Harper can have no duty to protect Holmes from the leg of a bed that posed absolutely no unreasonable risk of harm.
Nor do we conclude that the additional factors of the dark room and the arrangement of the furniture to be conditions that Adkins and/or Harper should have taken steps to avoid. As the trial court noted, bedrooms are not lit at night when people are sleeping; thus, it was not unreasonable that the room was dark when Adkins called out from her sleep in the middle of *249 the night. At the same time, we observe that Holmes had been working for the defendants for several years, and was obviously familiar with the arrangement of the furniture in the bedroom. She did not indicate that either the lighting or the arrangement of the furniture had been a problem in the past. Furthermore, the alleged arrangement of the beds was logical in view of the concern that Adkins might need assistance in the night.
We conclude from a review of the record that neither Adkins nor Harper created or maintained an unreasonable risk of harm to Holmes. The risk encountered by Holmes in Adkins' bedroom was no greater than the risk which might be encountered by any individual walking through any furnished house. Holmes failed to show that there was any condition caused by Adkins or Harper that created an unreasonable risk to her, and clearly, there was no duty on their part to protect Holmes from the stationary bed leg which had been situated in the same place during the entire tenure of Holmes's employment.
Nor can we say that Adkins and Harper are strictly liable to Holmes. In determining a party's strict liability, a plaintiff must prove that a vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. Kendall v. Weingarten Realty Management Co., 33,903 (La.App.2d Cir.09/27/00), 769 So.2d 171. As discussed, the bed leg is not an unreasonable risk of harm and, therefore, strict liability cannot be imposed on the Appellees. Accordingly, we conclude that the trial court's determination was correct and summary judgment was proper as a matter of law.

CONCLUSION
For these reasons, we conclude that the judgment of the trial court was correct and is, therefore, affirmed. Costs of this appeal are assessed to Holmes.
AFFIRMED.
NOTES
[1] We note that the correct spelling of Holmes's first name is "Gmain," although it has been spelled as "Germaine" throughout these proceedings.