(ON REHEARING GRANTED)
JjDENNIS R. BAGNERIS, SR., Judge.
The Plaintiff-Appellant, Darrell Cager, Sr. (“Cager”) brought this suit alleging that he is entitled to personal injury damages for an on-the-job injury pursuant to the intentional tort exception to the Louisiana Workers’ Compensation Act. The trial court dismissed his suit pursuant to a motion for summary judgment brought by defendant, Loomis-Fargo & Company (“Loomis”). For the following reasons, we affirm.
FACTS
This appeal arises from an altercation between Cager and the defendant, John Patrick Williams, in which the defendant shot Cager’s left hand. For purposes of the summary judgment motion and this appeal, Loomis adopts the testimony of Cager as follows.
The incident started at the Regions Bank in New Roads, Louisiana. At the time, Cager was driving an armored truck for transportation of currency to various banks and other entities in central Louisiana. The standard crew of the armored vehicle consisted of three individuals, a guard, a driver, and a messenger. At the time of this incident, co-employee John Williams was acting as the messenger and Raymond Newton was the guard. Cager was the driver. Williams was seated in |2the back of the armored vehicle, a self-enclosed area separate from the cab area containing Cager and Newton. By being stationed in the back of the truck, Williams could not enter or physically access in any way the cab area of the vehicle containing Cager.
The first sign of trouble between Cager and Williams occurred when they got to the Regions Bank in New Roads. Cager drove over speed bumps and Williams remarked that if Cager drove over any more speed bumps, he would “f ... ing” kill him. Cager laughed off the comment and did not pay it any attention. Williams and Newton, as per their job responsibilities, proceeded into the Regions Bank and returned to the armored truck. Cager then drove to the next bank, the Guaranty Bank, and in doing so hit more speed bumps. Williams did not say a word. After performing his duties inside the Guaranty Bank, Williams reentered the back portion of the truck and as Cager began to pull off, Williams made the statement again.
At that point, Cager pulled his vehicle to the side of the road allegedly intending to exit the truck to go back to the bank to report the threat made by Williams. He exited the truck despite the fact that there was a phone located in the truck and Williams could not physically access the cab area containing Cager. Cager exited the cab area and walked a couple of feet to clear the door, then closed the door. At that point, Williams allegedly came around from the front of the vehicle and swung at Cager striking him on the side of the head. Williams then allegedly took a couple of steps back and drew his gun and shot Cager in the left hand as Cager was stepping back.
^PROCEDURAL HISTORY
On December 15, 1999, Cager filed a lawsuit in district court against Loomis *241 alleging that the sole and proximate cause of the incident was due to the “negligence of defendant John Patrick Williams.” On August 7, 2000, Cager filed a supplemental petition, which alleged that the injuries were the result of an intentional act by defendant Williams. On February 12, 2001, Loomis filed an exception of no cause of action and motion for summary judgment alleging that: (1) Cager’s claims are barred by the exclusive remedy provisions of the Louisiana Workers’ Compensation Act, and (2) it' can not be held vicariously liable for Williams’s intentional acts. On April 5, 2001, although the trial court ordered that the claims based in negligence be dismissed as the exclusive remedy provisions of the Louisiana Workers’ Compensation Act barred them, it denied Loomis’s motion for summary judgment. On August 13, 2002, Loomis filed another exception of no cause of action and motion for summary judgment alleging that it would not be vicariously liable for an intentional tort, as the alleged assault was neither employment rooted nor incidental to the performance of either employee’s duties. On October 30, 2002, the trial court granted Loomis’s motion for summary judgment and dismissed Cager’s petition. Cager now appeals this final judgment.
STANDARD OF REVIEW
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no [ ¿genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. Id. La. C.C.P. art. 966(C)(2) provides that where, as in the instant case, the party moving for summary judgment will not bear the burden of proof at trial, his burden does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law.
DISCUSSION
Cager’s sole issue on appeal is whether Loomis is vicariously liable for the alleged intentional acts of John Williams against his co-employee Darrel Cager. Specifically, Cager argues that Loomis is vicariously liable because Loom-is |Rrequired Williams to carry a weapon, *242 Loomis trained Williams to use the weapon, Williams was required to display his loaded pistol at all times as part of his job as an armed guard, and that Williams was required to shoot people should the need arise. We find no merit to Cager’s argument.
As stated previously, a motion for summary judgment is a procedural device used to avoid a full-scale trial on the merits when there is no genuine issue of material fact. Pierre v. Bank, 2000-2729, p. 3 (La.App. 4 Cir. 11/21/01), 801 So.2d 1213, 1215. Louisiana jurisprudence prior to 1996 held that summary judgments were not favored and were to be used cautiously and sparingly. Farr v. Riscorp, 1997-2164, pgs. 2-3 (La.App. 4 Cir. 4/8/98), 714 So.2d 20, 22. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996 the legislature amended La. C.C.P. art. 966 and overruled the presumption in favor of trial on the merits. As such, summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. La. C.C.P. art. 966.
In Baumeister v. Plunkett, the Louisiana Supreme Court has set out the standards for determining whether an employer will be liable for intentional torts of an employee. 95-2270 (La.5/21/96), 673 So.2d 994. As stated in Baumeister:
“An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours.” Scott v. Commercial Union Ins. Co., 415 So.2d 327, 329 (La.App. 2d Cir.1982) (citing Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La.App. 4th Cir.1964)). “Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer’s objective.” Id.
More specifically, our LeBrane v. Lewis decision considered the following factors in holding an employer liable for a supervisor’s actions in stabbing his fellow employee:
(1) whether the tortious act was primarily employment rooted;
[ r,(2) whether the violence was reasonably incidental to the performance of the employee’s duties;
(3) whether the act occurred on the employer’s premises; and
(4) whether it occurred during the hours of employment.
292 So.2d 216 at 218 (La.1974). This does not mean that all four of these factors must be met before liability may be found. Miller v. Keating, 349 So.2d 265, 268 (La.1977). But as we noted above in Scott, an employer is not vicariously liable merely because his employee commits an intentional tort on the employer’s premises during working hours. 415 So.2d at 329. See also Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.), writ denied, 491 So.2d 24 (La.1986); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1321 (La.1985). The particular facts of each ease must be analyzed to determine whether the employee’s tortious conduct was within the course and scope of his employment. Scott, 415 So.2d at 329.
95-2270, pp. 3-4, 673 So.2d 994, 996-997.
Recently, courts have granted summary judgments in favor of employers in cases factually similar to this one.[1] In Eichel- *243 berger v. Sidney, a receptionist at a hair salon physically attacked a hairdresser after the receptionist refused the hairdresser’s request to play a videotape to entertain a chent’s child. 34,040, p. 1-2 (La.App. 2 Cir. 11/3/00), 771 So.2d 863, 864 writ denied, 2000-3476 (La.2/9/01), 785 So.2d 827. The hairdresser attempted to play the videotape herself and was physically assaulted by the receptionist. Id. Thereafter, the hairdresser filed suit against her employer, the National Hair Care Center, Inc. (“National”). National filed a motion for summary judgment alleging that, based on the facts as stated in plaintiffs petition, it was not vicariously liable for plaintiffs intentional tort as a matter of law. The trial court granted National’s motion for summary judgment, |7and dismissed the suit. On appeal, the Second Circuit affirmed the judgment of the trial court and found that the receptionist’s attack on the hairdresser was entirely extraneous to National’s interests. In finding that the receptionist’s attack on the hairdresser was entirely extraneous to the employer’s interest, the Court stated as follows:
Clearly, Ms. Sidney refused to perform the task that Ms. Eichelberger requested of her and Ms. Eichelberger assumed the task. Although it may have been within the scope of Ms. Sidney’s duties to put a videotape in the VCR to entertain a client’s children, it was not a reasonably foreseeable event that Ms. Sidney would violently attack Ms. Eichelberger because she chose to put in the videotape herself after Ms. Sidney refused to do so. The likelihood that Ms. Sidney would become enraged when her co-employee attempted to place a videotape in the VCR, especially after she had refused to do so herself, is not a “risk fairly attributable to the performance” of her duties. Baumeis-ter, supra.
Eichelberger, 771 So.2d at 867.
In Watkins v. International Service Systems, a supervisor questioned a janitorial employee about missing radios. 32,022, p. 1 (La.App. 2 Cir. 6/16/99), 741 So.2d 171, 173-174 writ denied, 99-2129 (La.10/29/99), 749 So.2d 640. The supervisor suspended the employee pending an investigation of the matter and the employee attacked the supervisor by punching and kicking him until someone stopped him. Id. Thereafter, the supervisor filed suit against his employer, International Service Systems, Inc. (“ISS”). ISS filed a motion for summary judgment, which alleged that it was not vicariously liable for the employee’s intentional tort because it was not performed within the ambit of his assigned duties or in furtherance of ISS’s objectives. The trial court agreed and granted summary judgment, which dismissed plaintiffs claims against his employer. On appeal, the Second Circuit affirmed the judgment of the trial court and found that lathe employee struck the supervisor “for purely personal considerations entirely extraneous to his employer’s interest.” Specifically, the Second Circuit stated:
... Henderson’s job entailed cleaning bathrooms and offices. His duties did not include stealing radios and kicking his supervisor in the head and chest. While Watkins was plainly functioning within his duties in suspending Henderson pending an investigation of the alleged theft, Henderson’s response *244 had no root in an employment endeavor. In committing the battery, Henderson clearly acted on personal motivations. Not only was Henderson’s theft of the radios a purely personal matter, but, in his deposition, he also indicated that his violent reaction was partly provoked by his long-term problem with the way Watkins treated him.
Nor can we say the battery furthered any ISS objectives. Rather, it deprived the company of two of its employees. We find that it was not a risk of harm fairly attributable to ISS’s business as a janitorial service. Henderson struck Watkins for purely personal considerations entirely extraneous to his employer’s- interest. Therefore, the trial court correctly determined that ISS is not vicariously liable for Henderson’s intentional tort.
Watkins, 741 So.2d at 174-175.
In Pye v. Insulation Technologies, Inc., 97-237 (La.App. 5th Cir.9/17/97), 700 So.2d 892, an employee filed suit against his employer, Insulation Technologies, Inc., after he was struck with a piece of wood by a subordinate employee at work. The plaintiff contended that the employer was responsible for the tortious act of the employee. Id. at 893. The employer filed a motion for summary judgment, which alleged that it was not vicariously liable merely because its employee committed an intentional tort on work premises during work hours. The trial court agreed with the employer and granted its motion for summary judgment. On appeal, the Fifth Circuit agreed with the trial court and affirmed the judgment. Specifically, the Fifth Circuit stated:
The likelihood that an employee would come up behind a supervisor and strike him in the face with a piece of driftwood is simply not a risk fairly attributable to the performance of the employee’s duties. An asbestos worker’s duties do not include battery on a co-employee. |9 Nor should the employer have foreseen such conduct on the job-site during working hours. Viledo’s [the tortfea-sor’s] actions were therefore not reasonably incidental to the performance of his employment.
This Court finds, as did the trial court, that the plaintiff failed to establish that the worker’s tortious act was employment rooted. The employer derived no benefit from the act, and the act, hitting one’s supervisor, was ‘entirely extraneous to his employer’s interest [.]’ ”
Pye, 700 So.2d at 894.
In Barto v. Franchise Enterprises, Inc., a supervisor at a restaurant was stabbed by an employee of the restaurant when the supervisor questioned him about a theft from the restaurant. 23,205 (La.App. 2 Cir. 10/30/91), 588 So.2d 1353, writ denied, 91-2742 (La.1/17/92), 591 So.2d 708. The supervisor filed suit against the employer, Franchise Enterprises, Inc., on the theory of vicarious liability. The trial court granted a summary judgment in favor of the supervisor, and against the employer, finding the employer liable for the tortious act of the employee. On appeal, the Second Circuit reversed the trial court’s summary judgment in favor of the employee, and granted summary judgment in favor of the employer. The Second Circuit found that “Fletcher’s act of stealing money and assaulting his supervisor during an investigation is clearly beyond the course and scope of his employment.” Id. at 1357. Further, the Second Circuit found that “Fletcher’s conduct of stabbing his supervisor did not benefit his employer and was entirely extraneous to his employer’s interests. Thus, Fletcher’s conduct cannot be regarded as a ‘risk of harm fairly attributable to the employer’s business.’ ” Barto, 588 So.2d at 1357.
*245 In lieu of the recent case law cited above, we agree with Loomis that the altercation between Williams and Cager was not primarily employment rooted and was entirely extraneous to Loomis’s interests. We find that Williams duties did Imuot include assaulting a co-employee with a firearm simply because that employee made driving conditions uncomfortable, and that the assault and battery was adverse to Loomis’s interest of safeguarding the currency.
For these reasons, we find no error in the trial court’s conclusion that no question of material fact remains but that Loomis is not liable in tort for the injury incurred by Darrell Cager.
AFFIRMED.
MURRAY, J., dissents with reasons.

. See Eichelberger v. Sidney, 34,040 (La.App. 2 Cir. 11/3/00), 771 So.2d 863, writ denied, 2000-3476 (La.2/9/01), 785 So.2d 827; Watkins v. International Service Systems, 32,022 (La.App. 2 Cir. 6/16/99), 741 So.2d 171, writ denied, 99-2129 (La. 10/29/99), 749 So.2d 640; *243 Pye v. Insulation Technologies, Inc., 97-237 (La.App. 5th Cir.9/17/97), 700 So.2d 892, writ denied, 97-2571 (La.12/19/97), 706 So.2d 461; Barto v. Franchise Enterprises, Inc., 23,205 (La.App. 2nd Cir. 10/30/91), 588 So.2d 1353, writ denied, 91-2742 (La.1/17/92), 591 So.2d 708.